# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY

## PIKEVILLE DIVISION

**UNITED STATES OF AMERICA**                                           **PLAINTIFF**

**vs.**                                        **Criminal No. 7:22:CR:007-001-REW**

**CRYSTAL COMPTON, D.O.**                                     **DEFENDANT**

## **<u>SENTENCING MEMORANDUM</u>**

Defendant, CRYSTAL COMPTON, D.O., submits this Sentencing Memorandum evaluating each one of the various factors under 18 U.S.C. § 3553(a) for the Court's consideration at the Sentencing hearing scheduled for February 21, 2024 at 10.30 a.m., in London, Kentucky.

The court in determining the particular sentence to be imposed and the need for a variance, shall consider the factors found at 18 U.S.C. § 3553(a). These factors include; the nature and circumstance of the offense and the history and characteristics of the defendant, the need to reflect the seriousness of the offense, to promote respect for the law and provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed vocational or educational training, medical care, or other correctional treatment in the most effective manner.

The defendant respectfully request the court to sentence her to a minimum term of incarceration that is commiserate with her crime.

## **BACKGROUND – NATURE & CIRCUMSTANCES OF THE OFFENSE**

On or about April 28, 2022, the Grand Jury for the United States District Court for the Eastern Kentucky returned a multi count indictment against the defendant CRYSTAL COMPTON, D.O., and Kayla Lambert charging the Defendant COMPTON with multiple counts of knowingly and intentionally conspiring to use an registration number belonging to another individual in the course of distributing a controlled substance (Count 1), knowingly conspiring with another person to unlawfully distribute and dispense prescriptions that were not issued for a legitimate medical purpose (Count 6), and knowingly and intentionally distributing or aiding and abetting distribution of prescriptions that were not issued for a legitimate medical purpose. (Counts 7-50).

The defendant initially appeared for an initial appearance, via a summons, with counsel before Magistrate Judge Atkins and the defendant was release on her own recognizance. Finally, on September 13, 2023, the defendant appeared for a jury trial. This trial lasted seven days and the jury returned a Guilty verdict on all counts on September 21, 2023. The

defendant was immediately placed into custody and has remained in custody since that date.

The essential facts of the case are as follows. Dr. Compton was a individual who was born and raised in Pike county, Kentucky. She was born to the marital relationship of Finis Compton and Linda Compton. She graduated from Pike County Central High School in 1997 and was first in her class out of one hundred and thirty students. She went on to attend Morehead State University for one year and majored in biology. During this one year, her sister, Finicia Compton got extremely sick and so Dr. Compton returned home and started school at Pikeville College. (This is a common theme in Dr. Compton's life, a desire to help others in their time of need). In 2001, she graduated, Magna Cum Laude with a degree in Biology and Chemistry. She then went to University of Kentucky for one year and obtained a Master of Public Health degree. In 2002, she was admitted into Osteopathic School and she graduated from the Pikeville College of Osteopathic Medicine in 2006 with a Doctor of Osteopathic Medicine Degree.

During her Residency program in Internal Medicine, after obtaining her D.O. degree, Dr. Compton received several awards, such a being

named the Chief Resident, Humanism award, Perceptor of the Year and she even assisted in co-authoring a book on Osteopathic Principles and Practices. Upon completion of her Residency in 2010, Dr. Compton was offered a job at the Pikeville Medical Center as a Staff Physician. This included her primary responsibility covering Oncology patients who suffered extreme pain and their treatment using her Internal Medicine specialty.

Finally in 2015, Dr. Compton left Pikeville Medical Center and joined East Kentucky Medical Group. (Hereinafter referred to as "EKMG"). At EKMG, Dr. Compton primarily focused on taking care of geriatric patients and the other doctor took care of all pediatric patients. Over 70% of the revenue at EKMG was generated by the geriatric patients that were seen by Dr. Compton. EKMG was a previously established practice that had been around for several years. On October 17, 2018, EKMG filed for bankruptcy and it was shuttered down. In September of 2018, Dr. Compton opened the Good Doctor, another Internal Medicine practice. This was also a similar practice to EKMG, but in a much smaller scale and it did not have a pediatric practice associated with it.

Per the trial testimony of the thirteen witnesses offered by the Defendant, Dr. Compton was a caring and compassionate doctor, who took time with each one of them and listened to them, took notes down, and then treated their medical conditions.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

CRYSTAL COMPTON, D.O., is a lifelong resident of Pike county, who could've gone anywhere she wanted to practice medicine, but chose to stay in her hometown and treat her friends and family. Dr. Compton took care of her mother during her final days and then took care of her during paternal grandparents also. Dr. Compton's

The defendant has been extremely close to her mother over the years and once she passed away in 2009, as a result of acute leukemia, Dr. Compton was devastated. Dr. Compton has been married once in her life and she does not have any children. The defendants father suffers from high blood sugar and Dr. Compton was treating him and taking care of him, until she was no longer able to. Dr. Compton's sister, Finicia Compton and Dr. Compton are very close with each other.

Dr. Compton was too kind to her own fault. During her years as a practicing physician, if the patients were unable to afford the cost of an

office visit, there were times when Dr. Compton would travel to the patients home to treat them. Also on many occasions, when patients would not be able to afford the cost of co-pays, Dr. Compton would cover it for them, so they would not have to go without treatment. Dr. Compton would also on occasion provide transportation to her patients so they could get back home, in addition to buying groceries and medicines for her patients. Dr. Compton was also voted as Favorite Doctor by the community. Furthermore, she also previously sand in a traveling gospel group.

      To understand Dr. Compton better, the undersigned counsel has been able to gather several letters from individuals that have known Dr. Compton for far longer than the undersigned counsel has known Dr. Compton. This includes a letter from Aileen Murray Childers, a retired school teacher and the grandmother of Dr. Compton, Ashley Hammond, a friend of thirty years, Bethany Boyd, a Nurse Practitioner who has lived next to Dr. Compton for twenty eight years and someone who was mentored by Dr. Compton, Brenda Newsome, a caregiver to the elderly in the community, Bennie Lynn Hammond, a dear friend of Dr. Compton's, from Dr. Compton's sister and her best friend in life, Finicia Compton, from Jeff Boyd, Dr. Compton's cousin and next door neighbor, from Karrah Upchurch, a former patient of Dr. Compton's, from Linda Hurley, from Mary

E Bush, a family friend and patient of Dr. Compton's, from Michael Pinson, Dr. Compton's ex-husband and childhood friend, from Nancy Cade, Ph.D., a former patient of Dr. Compton's, from Patty R. Belcher, a former school teacher of Dr. Compton's, Rachel R. Hamilton, a close friend of Dr. Compton's, from Dr. Robert E. Royalty, am Orthopedic Surgeon and a former classmate of Dr. Compton, who also testified against Dr. Compton as a witness for the United States, from Shasta Bowens, a former patient of Dr. Compton's, from Susan Newsom, a former patient of Dr. Compton's, and finally from Teresa Jarvis, a family friend of Dr. Compton's.

There is a common theme with all of these letters, which is that Dr. Compton was a small town Doctor, who intimately cared about her patients and also cared about everyone around her, more than she cared about herself. She was not a greedy doctor who was out to make money for herself an unjustly enrich herself.

## **THE DEFENDANT MADE A HUGE MISTAKE IN HER LIFE**

Dr. COMPTON made a huge mistake in her life when she started prescribing pain medications. Is it true that Dr. Compton prescribed medications to her patients without there being a medical necessity for these prescriptions; according to the jury, the answer to this question is yes. But according to twelve out of the fifteen patients that are part of the

charged conduct, Dr. Compton's treatment allowed them to have a normal life, in which they worked normal day to day jobs, took care of their families and were hugely productive members of society.

Dr. COMPTON, would be the classic person that needs to be punished, deterred, and rehabilitated, not convicted, warehoused and forgotten. The need for the sentence to promote respect for the law and to provide just punishment can be attained by the Court by sentencing Dr. COMPTON, to a minimum term of incarceration, followed by a term of Supervised Release.

## **THE DETERRENCE FACTOR – GENERAL AND SPECIFIC**

The Pre-Sentence Report places Dr. Compton at a Criminal History category of I. She has zero (0) criminal history points. The defendant has never been arrested in her life prior to this incident and has no criminal convictions to speak of. Going back to some of the factors outlined by Former Attorney General Holder in his statements, Dr. COMPTON, has no ties to any gangs, and is not a violent criminal. This is rather clear from the PSR.

Even people like Dr. Compton, need help when they fall to the ground. Instead of putting her in prison and warehousing her, Dr. Compton,

is someone who can be helped. This arrest has already changed her life. She will be punished either way to a sentence that is the longest that she's ever served, and furthermore, she will enver be able to practice medicine again. This is the formidable part of Dr. Comptons adult life that she would have spent in prison. If the United States Department of Justice intends to make changes to fix our burgeoning prison problem, we need a place to start and someone to start this with, and Dr. Compton, is probably the best candidate to do so.  The undersigned counsel does not have the magic solution to this problem, but it has to be resolved for someone like Dr. Compton to survive and thrive while in the BOP custody.

    In looking at the 3553 factors, deterrence is a big part of this. In regards to Dr. Compton in particular, she has surrendered her Medical License to the state of Kentucky and has practiced medicine for almost four years now. She has no ability to practice medicine now. This is her specific deterrence. The simple fact is that general deterrence has also been accomplished by a physician such as Dr. Compton being incarcerated and losing her medical license has brought about a certain degree of general deterrence.

## JUDICIARY SENTENCING INFORMATION CALCULATIONS

The defendant, Dr. Compton's Total Offense level falls at 38, and her Criminal History category falls at Category I. With these numbers, her guideline sentence falls at 235 to 293 months.

## FEDERAL DEFENDANTS IN SELECTED CELL

During the last five fiscal years (FY2018-2022), there were 18 defendants whose primary guideline was §2D1.1 and Other was the primary drug type, with a Final Offense Level of 38 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 18 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 138 month(s) and the median length of imprisonment imposed was 144 month(s).

The sentencing data provided does not reflect the Commission's recommendation regarding the appropriate sentence to be imposed or represent the Commission's official position on any issue or case. Nor does the information provided reflect the Commission's position regarding the weight to be given, if any, to the above sentencing information in a court's

determination of the appropriate sentence to be imposed. If the court does consider the above sentencing information as part of its consideration of the factors in 18 U.S.C. § 3553(a) in imposing sentence, it should do so only after considering the properly calculated guideline range and any applicable departures provided for in the Guidelines Manual.

### Sentence Imposed Relative to the Guideline Range for Defendants in Selected Cell
Fiscal Year 2018-2022

■ Within Range   ■ Downward Departure or Variance   ■ Upward Departure or Variance   ■ §5K1.1 Substantial Assistance

| 21% | 41% | 38% |

**Note:** The figure includes the 29 defendants reported to the Commission whose primary guideline was §2D1.1 and Other was the primary drug type, with a Final Offense Level of 38 and a Criminal History Category of I, including defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Defendants who received a §5K1.1 substantial assistance departure are included in this analysis but are excluded from other analyses below. As such, the number of defendants included in this analysis may exceed the number of defendants in other analyses. Total percentages displayed in the figure may not sum to 100% due to rounding.

### Sentence Type for Defendants in Selected Cell (after excluding §5K1.1)
Fiscal Year 2018-2022

■ Defendants Receiving Imprisonment (In Whole or In Part)   ■ Defendants Receiving Probation or Fine Only

100%

**Note:** The figure includes the 18 defendants reported to the Commission whose primary guideline was §2D1.1 and Other was the primary drug type, with a Final Offense Level of 38 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Total percentages displayed in the figure may not sum to 100% due to rounding.

The *Defendants Receiving Imprisonment* category includes defendants sentenced to a term of imprisonment (in whole or in part) and who received a commitment to the Bureau of Prisons. This category includes (1) defendants sentenced to a term of imprisonment only, with no additional conditions of community confinement, home detention or intermittent confinement (Prison Only) and (2) defendants sentenced to imprisonment and conditions of alternative confinement as defined in USSG §5C1.1 (Prison and Alternatives). This category includes, but is not limited to, Zone A, Zone B, or Zone C cases receiving prison with additional conditions of a term of community confinement, home detention, or intermittent confinement.

The *Defendants Receiving Probation* category includes defendants sentenced to a term of probation with or without a condition of community confinement, intermittent confinement, or home detention (Probation Only and Probation and Alternatives). This category also includes defendants who received no prison, no probation, and no time of alternative confinement as defined in USSG §5C1.1, but instead who received a fine and/or a special assessment (Fine Only).

### Average and Median Length of Imprisonment for Defendants in Selected Cell Who Received a Sentence of Imprisonment (excluding §5K1.1)
Fiscal Year 2018-2022

■ Average Length of Imprisonment   ■ Median Length of Imprisonment

Average: 138
Median: 144

**Note:** The figure includes the 18 defendants reported to the Commission (1) whose primary guideline was §2D1.1 and Other was the primary drug type, with a Final Offense Level of 38 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) the defendant received a sentence of imprisonment in whole or in part. Cases missing information necessary to complete the analysis were excluded from this figure.

*Average and Median Length of Imprisonment* reports the average and median term of imprisonment imposed in months for cases in which a term of imprisonment was imposed. Probation sentences are excluded. Any portion of a sentence that is an alternative confinement as described in USSG §5C1.1 is also excluded. Cases in which a sentence is imposed, but where the length is indeterminable, are excluded. When sentences are expressed as "time served" on the J&C, Commission staff uses the dates in federal custody to determine the length of time served when an defendant has been in custody the entire time. If the defendant has been in and out of custody, or the start date is unclear/missing, then the Commission assigns a value of one day as a minimal time served amount for these cases. In cases where the court imposes a sentence of life imprisonment, sentences are reported as 470 months, a length consistent with the average life expectancy of federal criminal defendants given the average age of federal defendants. Sentences of greater than 470 months are also reported as 470 months.

## **DEFENDANTS PENDING OBJECTIONS**

The Defendant specifically reiterates Dr. Compton's specific objections to the PSI below.

¶ 12-13. The defendant objects to the quantity here in question. There were 13 patients who testified that they were taking their medications as prescribed to them after legitimate consultations with Dr. Compton.

¶ 23-¶ 29. The defendant vehemently denies that she obstructed justice. The defendant cannot be punished for her exercising her right to a jury trial. The defendant testified consistent with what her patient practices were. This is a fact specific inquiry that the court can undertake based on the trial testimony.

¶ 37. There has been no mention that any controlled substances were kept on site at any of the doctors offices and thus this enhancement should not apply here. Thus, Application note # 17, would not apply here in this specific case. USSG 2D1.1(b)(12) specifically does not list Doctors or Physicians as part of the Application notes as in other enhancement.

## **THE COURT SHOULD GRANT A DOWNWARD VARIANCE**

The defendant suffers from numerous medical issues, chief of which is that she is at this point wheelchair bound for majority of her day. Although there is a dispute as to whether the defendant is actually paralyzed or not, the defendant is confined to a wheelchair. The defendant is severely obese and also has broken her ankle and her back on many occasions. She also has bladder problems, which causes her to use a catheter. Her other medical conditions include, hypothyroidism, hypertension, and peripheral neuropathy. As the writer of the PSI notes, the defendant is presently on nine different medications. Any sentence that the defendant will be given will be the longest of her life. With her medical conditions that has been outlined in ¶¶ 69-82, a downward variance is appropriate.

## **CONCLUSIONS**

The Defendant would respectfully ask the court that he make a recommendation to the Bureau of Prisons that she be housed as close to Pikeville, Kentucky as possible in a medical facility, such as n FMC. The defendant would also request the court to recommend that she complete the five hundred hour RDAP program.

WHEREFORE, we would respectfully submit that the court grant the Defendant a downward variance and sentence her to a term of incarceration, followed by a term of three years supervised release or probation, which is no more than necessary to promote respect for the law, yet at the same time be a deterrent for future criminal behavior.

Respectfully submitted this 14th day of February, 2024.

                              CRYSTAL COMPTON, D.O..
                              By Counsel

                              Very truly yours,

                              JOY LAW OFFICE
                              2701 Louisa Street
                              P.O. Box 411
                              Catlettsburg, KY 41129
                              Telephone: (606) 739-4569
                              Facsimile: (606) 739-0338
                              Cell: (859) 488-1214

                              __s/ Sebastian M. Joy_____
                              Sebastian M. Joy, Esq.
                              Counsel for Defendant CRYSTAL
                              COMPTON, D.O..
                              Kentucky Bar # 92583
                              West Virginia Bar # 10945
                              E-mail: sjoy@joylawoffice.com
                              Admitted in Kentucky & West Virginia

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY

## PIKEVILLE DIVISION

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**vs.**                                    Criminal No. 7:22:CR:007-001-REW

**CRYSTAL COMPTON, D.O.**                                              **DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **SENTENCING MEMORANDUM and EXHIBITS** has been electronically filed with the Clerk of Court this date using the CM/ECF system and served upon opposing counsel as follows:

**VIA CM/ECF:**   Office of United States Attorney
                  Lexington, KY

**DATE:**          February 14, 2024

                                Very truly yours,

                                JOY LAW OFFICE
                                2701 Louisa Street
                                P.O. Box 411
                                Catlettsburg, KY 41129
                                Telephone: (606) 739-4569
                                Facsimile: (606) 739-0338


                                __s/ Sebastian M. Joy_____
                                Hon. Sebastian M. Joy
                                Counsel for Defendant
                                Kentucky Bar # 92583
                                West Virginia Bar # 10945

E-mail: sjoy@joylawoffice.com
Admitted in Kentucky & West Virginia